E-FILED
Friday, 26 April, 2019  12:32:30 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
IN THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MARK SCOTT,
    Plaintiff,

-vs-

ILLINOIS DEPARTMENT OF CORRECTIONS DIRECTOR
JOHN BALDWIN, JOHN DOE DEPUTY DIRECTOR,
WARDEN TERRI KENNEDY, MAJOR GLENDAL FRENCH,
MAJOR BRIAN POSEY, LIEUTENANT JACOB DALTON,
LIEUTENANT LEE EVANS, SERGANT T.J. FRANCIS,
OFFICER KENDRA R. WOLF, OFFICER JESS F. POTTS,
JOHN/JANE DOE STATEWIDE TACTICAL TEAM
MEMBERS, JOHN DOE OFFICERS, IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITY,
    Defendants.

Case No.

SCANNED at PCC and E-Mailed
4/26/19 (date) by VIC (initials)
15 (# of pages)

## 1983 COMPLAINT

This is a civil rights action filed by Mark Scott, a state prisoner for damages and injunctive relief under 42 U.S.C. § 1983, alleging excessive use of force in violation of the Eighth Amendment of the United States Constitution, inhumane conditions of confinement in violation of the Eighth Amendment of the United States Constitution and confinement in segregation in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution and retaliation. The Plaintiff also alleges the tort of assault and battery.

## JURISDICTION & VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is

conferred upon this Court by the aforesaid statues and 28 U.S.C. §§ 1331 and 1343.

2. The Court has supplemental jurisdiction over the Plaintiff's state law tort claim under 28 U.S.C. §1367.

## PARTIES

3. The Plaintiff, Mark Scott, was incarcerated at Pontiac Correctional Center ("Pontiac") during the events described in this Complaint.

4. Defendants are employees of the Illinois Department of Corrections ("IDOC") who were employed at Pontiac Correctional Center, 700 West Lincoln Street, Pontiac, IL 61764, at all times relevant to this Complaint.

5. Defendant John Baldwin was the Director of IDOC and was in charge of finalizing all major decisions and overseeing all major operations.

6. John Doe Deputy Director was in charge of deploying the Statewide Tactical Team.

7. Defendant Terri Kennedy was the Warden at Pontiac and was in charge of deploying the tactical team, ordering the shutting off of water and finalizing disciplinary actions.

8. Defendant Glendal French was the Major at Pontiac.

9. Defendant Brian Posey was the Major at Pontiac, he was the Chairperson of the Adjustment Committee and responsible for conducting disciplinary hearings for prisoners accused of breaking prison rules.

10. Defendant Jacob Dalton was the Lieutenant at Pontiac, he was the Chairperson of the Adjustment Committee and responsible for conducting disciplinary hearings for prisoners accused of breaking prison rules.

11. Defendant Lee Evans was the Lieutenant at Pontiac, he was in charge of the day to day operations in the North Cellhouse Segregation.

12. Defendant T.J. Francis was the Sergant and leader of the Statewide Tactical Team in IDOC, he was in charge of the extraction team.

13. **Defendant** Kendra R. Wolf was an Officer at Pontiac, she was a

member of the Adjustment Committee, she was in charge of conducting disciplinary hearings for prisoners accused of breaking prison rules.

14. Defendant Jess F. Potts was a Officer at Pontiac, he was assigned to the Internal Affairs Unit.

15. Defendants John/Jane Doe members of the Statewide Tactical Team were employed by IDOC, their parent institutions are unknown.

16. Defendants John Does were Officers at Pontiac.

17. All the Defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

## FACTS

18. North Cellhouse consists of 8 galleries, the even number galleries are on one side of the unit and the odd on the opposite side.

19. North Segregation is 1, 3, 5, 6, 7 and 8 galleries. North Administrative Detention Unit is 2 and 4 galleries. There's a divider that seperates 2 & 4 from 6 & 8.

20. On February 21, 2018, Plaintiff was assigned to Cell N-817, in North Segregation at Pontiac.

21. On February 21, 2018, at approximately 7 p.m., a series of incidents (alleged staff assaults, destruction of property, arson) occurred on 2 & 4 galleries of the North Administrative Detention Unit ("NADU").

22. At apprx. 7 p.m., 8 gallery was completely flooded with water.

23. At apprx. 7:30 p.m., all water on 8 gallery was shutoff, there was no hot/cold water and the toilets were inoperable.

24. At apprx. 11 p.m., the Statewide Tactical Team reported to 2 & 4 galleries in the NADU, and began executing cell extractions.

## RETALIATION / MISUSE OF FORCE

25. On February 22, 2018, at apprx. 2:30 p.m., without incident, the Statewide Tactical Team reported to 8 gallery in the North Cellhouse.

26. The tactical team was wearing gas masks, helmets, flak vests, they

carried batons and chemical agent disperser guns.

27. The tactical team without warning or provocation, in retaliation for the series of incidents that occurred on 2 & 4 galleries, began at cell N-801, spraying, beating and extracting inmates on 8 gallery.

28. At apprx. 3 p.m., Sergant T.J. Francis and several John/Jane Doe members of the Statewide Tactical Team arrived at Plaintiff's cell and opened the cuff hatch on the door.

29. Plaintiff was sitting on his bunk with his nose and mouth covered, unsuccessfully trying to minimize the effects of the abundance of chemical agents that was in the air from the previous assaults, in which the tactical team took no precautions to minimize.

30. Without warning or provocation, Plaintiff heard one of the tactical team members say "spray him" and a John Doe Statewide Tactical Team member began shooting Plaintiff with chemical agents.

31. Plaintiff was initially shot with 3 bursts of chemical agents and immediately fell to the floor in severe distress. Plaintiff's lungs felt as if they were on fire, causing him excruciating pain. Plaintiff could no longer breathe and was left to squirm on the floor trying to find air - fearing death.

32. Plaintiff begged for assistance and repeatedly stated "I can't breathe", to this an unknown tactical team member replied "if you can talk, you can breathe".

33. Plaintiff crawled up onto the toilet contemplating placing his face into the urine and feces water within the toilet to gain relief from the burning, when he was shot 3 more times in the back of the head, he then lost consciousness.

34. Plaintiff awoke in handcuffs and leg shackles with members of the tactical team punching him in his face and ribs while screaming "stop resisting". Plaintiff was then dragged out of the cell and down the gallery.

35. Plaintiff was placed in the South House chow hall, where he was forced to his knees and told to place his chest up against a wall, his hands were restrained

behind his back with his legs shackled. Plaintiff was told by John Doe tactical team member that if he moves, he will be sprayed again, and if he spits, he will be sprayed again.

36. Plaintiff could not see out of either eye due to being shot in the face and head with chemical agents; Plaintiff could not breathe out of his mouth due to excruciating pain in his lungs; Plaintiff could not breathe through his nostrils due to the non-stop snot flowing out of them; Plaintiff was afraid to spit, so he allowed the snot and mucus to run down his body; Plaintiff was shaking profusely due to the skin over his entire body feeling like it was melting off. Plaintiff was in this kneeling position for 45 minutes.

37. Plaintiff was then guided to an unknown area where a nurse put two drops of solution into his eyes.

38. Plaintiff was then guided to another unknown area where he was forced to his knees, while still in leg & hand restraints, he was stripped naked.

39. While on his knees, Plaintiff was ordered to lean forward and place his head onto the floor. A John/Jane Doe member of the Statewide Tactical Team then abused and humiliated Plaintiff by using a baton to spread Plaintiff's buttocks and next used the baton to move Plaintiffs genitals.

40. Plaintiff's clothing was then placed back on him without removing the restraints.

41. Plaintiff was then guided back to the South House chow hall to a seat, where he remained the next 3 hours in leg & arm restraints, suffering the debilitating effects of the abundance of chemical agents used on him.

42. Plaintiff repeatedly begged John Doe members of tactical team to be returned to cell or placed into shower, the reply was always "no talking".

43. Plaintiff was then escorted back to his cell.

44. Plaintiff was not allowed to decontaminate his body for 8 hours after the initial bursts of chemical agents were shot.

45. During these events the Plaintiff did not provoke, threaten or resist the tactical team members in any fashion or break any institutional rules.

46. Defendants Sergeant T.J. Francis and John/Jane Doe members of the Statewide Tactical Team retaliated with excessive force against the Plaintiff and other inmates on 8 gallery because of the series of incidents that took place on 3 & 4 galleries of the NADU.

47. Defendants Sergeant T.J. Francis and John/Jane Doe's are members of the Statewide Tactical Team.

48. IDOC's Statewide Tactical Team has engaged in excessive and abusive force against inmates in the past.

49. IDOC's Statewide Tactical Team are defendants in an ongoing class-action excessive force case.

## CONDITIONS OF CONFINEMENT

50. On February 21, 2018, at apprx. 7 p.m., 8 gallery in North Segregation was flooded, the cells had approximately 4 inches of water.

51. On February 21, 2018, at apprx. 8 p.m., the hot/cold and toilet water was shut off, by the order of Warden Kennedy.

52. Plaintiff was defecating at the time the water was shut off, so the urine & feces had to sit in the toilet until the water was restored over 24 hours later.

53. Other inmates did not want the urine & feces in their toilets, so they pushed it out onto the gallery.

54. On February 22, 2018, at apprx. 8 a.m., Major Glendal French and a John Doe officer fed breakfast trays on 8 gallery. They were pushing the food cart with trays on the top and bottom racks through the water on the gallery that was contaminated with urine and feces. The bottom rack is apprx. 6 inches off the floor.

55. Plaintiff brought to Major French's attention that it was urine & feces in the flood water that they were pushing the trays through, Major French replied

"how else are we suppose to do it? Y'all put it there- deal with it."

56. At apprx. 9-10 a.m., Lieutenant Lee Evans and 2 John Doe Officers swept and squeegeed the contaminated water off the gallery.

57. Plaintiff asked Lt. Evans to turn the water on so that he could flush the toilet, Lt. Evans replied "I will not do that, you have to ask them peoples". Plaintiff next asked Lt. Evans would they be coming back with cleaning supplies to clean the urine and feces left behind, Lt. Evans replied "I'm not the janitor, I'm the lieutenant, this is a favor for y'all."

58. At apprx. 1 p.m., 2 John Doe Officers fed lunch trays on 8 gallery, Plaintiff asked if they would return to clean the remnants of urine & feces off the gallery, they replied "we were told to feed and get off the gallery."

59. At apprx. 2:30 p.m., the Statewide Tactical Team reported to 8 gallery, they began at cell 801, spraying, beating and extracting inmates, this occurred at every cell prior to Plaintiff's.

60. Well before the Statewide Tactical Team arrived at Plaintiff's cell, he was in severe distress, coughing, choking, eyes & lungs burning from the abundance of chemical agents dispersed. The tactical team took no measures before or during the attack to minimize the effects of the chemical agents in the unit.

61. Plaintiff was sprayed, beaten and extracted, then returned to the cell.

62. Upon Plaintiff entering his cell (N-817), he immediately noticed that the floor, walls, sink/toilet were all covered in chemical agents.

63. Plaintiff next noticed that his toothpaste, toothbrush, soap and deodorant was in the urine & feces within the toilet.

64. At apprx. 10 p.m., the water was restored on 8 gallery. The water was shut off for apprx. 27 hours.

65. No cleaning supplies were provided to Plaintiff to decontaminate his body or the cell.

66. Plaintiff had to use hot water and shampoo to clean the cell and the water reactivated the chemical agents to the point that Plaintiff thought his skin was burning off.

67. Plaintiff attempted to "wash up" in the sink, the water reactivated the chemical agents all over his body, it felt as if Plaintiff had been sprayed all over again, he endured this twice a day for 3 days until the chemical agents disipated.

68. For 3 weeks, each time Plaintiff swept and mopped the cell floor (twice a day), the chemical agents embedded in the floor would reactivate, causing him to sneeze until his nose bled.

69. For nearly 1 month, each time the gallery was swept and mopped, the chemical agents would reactivate, causing Plaintiff to cough, sneeze and his eyes to water.

70. Each time the chemical agents reactivated, Plaintiff would relive the traumatic attack over again, causing severe anxiety and paranoia, amongst other things.

71. Defendants Sergant T.J. Francis and John/Jane members of the Statewide Tactical Team retaliated against Plaintiff and other inmates on 8 gallery by forcing them to endure extremely harsh conditions, because of the series of incidents that took place on 3 & 4 gallery of the NADU.

### DENIAL OF DUE PROCESS

72. On February 23, 2018, Plaintiff was served with a disciplinary report for disobeying a direct order essential to the safety and security, based on the above-described events.

73. On March 6, 2018, Plaintiff was served a disciplinary report for dangerous disturbance and security threat group or unauthorized organizational

activity, this report was also based on the above-described events.

74. 30 Illinois Administrative Code 504.30(e) states: "Service of a disciplinary report upon an offender shall commence the disciplinary proceedings. In no event shall a disciplinary report be served upon an offender more than 8 calendar days after the commission of an offense or the discovery of an offense unless the offender is unavailable or unable to participate in the proceedings."

75. Pursuant to 20 Ill. Adm. Code 504.30(e) and 735 ILCS 5/3-8-7 et seq., service of the second disciplinary report exceeded its legal limitations by 5 days, as 3/1/18 was the expiration for a 2/21/18 discovery.

76. Plaintiff made a request for witness on the original copy of the disciplinary report served 2/23/18. Plaintiff listed the "Tactical Team Camera" as his witness and stated that the witness can testify to: "I was never provided any orders to cuff up, I was sprayed and cuffed."

77. On March 8, 2018, Plaintiff received an Adjustment Committee hearing in front of Lieutenant Jacob N. Dalton (Chairperson) and Correctional Officer Kendra R. Wolf.

78. The Adjustment Committee over Plaintiff's objection merged the 2 disciplinary reports that were served 11 days apart.

79. The Adjustment Committee failed to produce the video footage from the "Tactical Team Camera" that Plaintiff listed on the original copy of the ticket as a witness.

80. The Adjustment Committee failed to inform Plaintiff of what actions he took to participate in the dangerous disturbance or with any evidence that he was provided any direct orders to cuff up.

81. After the hearing, Plaintiff received a Final Summary Report stating he had been found guilty of all the charges.

82. Plaintiff was disciplined with 6 months segregation and revocation

of 1 year Good Conduct Credits.

83. The Final Summary Report fails to document Plaintiff's request for witness/production of video footage, and it fails to state why this request was not honored.

84. The Final Summary Report fails to cite any administrative rule that allows the Adjustment Committee to "merge" disciplinary reports.

85. The Final Summary Report fails to provide any reasoning or authority that excuses the time frame to serve a disciplinary report violation.

86. On April 13, 2018, Plaintiff was served a disciplinary report for dangerous disturbance and security threat group or unauthorized organizational activity, this was the third disciplinary report based on the above-described events.

87. Plaintiff again listed on the original copy of the disciplinary report witnesses/evidence he wanted produced. Plaintiff listed "Camera #34194 (8 Gallery)" and stated that the witness can attest to: "Camera footage will show that I did not flood or participate in dangerous disturbance. Tactical Team handheld camera will show I was never given a direct order."

88. On April 18, 2018, Plaintiff attended an Adjustment Committee hearing in front of Major Posey (Chairperson) and C/O Kendra R. Wolf.

89. Plaintiff was informed by C/O Wolf that the Office of Inmate Issues remanded the disciplinary report - that was served on March 6, 2018, to be "rewritten, reserved and reheard."

90. Plaintiff acknowledged to the Adjustment Committee that the third disciplinary report does provide specific acts to substantiate the dangerous disturbance on 2 & 4 galleries, but it still fails to allege any participation by himself.

91. Plaintiff stood on his previous argument that the serving of the disciplinary report on March 6, 2018, was untimely.

92. Plaintiff again requested that the camera footage be produced and used for any determinations.

93. After the hearing, Plaintiff received a Final Summary Report stating that he had been found guilty of all the charges.

94. Plaintiff was again sentenced to 6 months segregation and 1 year loss of Good Conduct Credits.

95. The Adjustment Committee failed to produce the witnesses/evidence that Plaintiff listed on the original copy of the disciplinary report, and the Final Summary Report fails to provide a reason of why they did not utilize the witness/evidence.

96. The Final Summary Report fails to cite any administrative rule that allows the Adjustment Committee to "combine" the disciplinary reports served 11 days apart.

97. The Final Summary Report fails to provide any reasoning or authority that excuses the time frame to serve a disciplinary report violation.

98. The Final Summary Report fails to state what acts Plaintiff performed to participate in the dangerous disturbance.

99. Pursuant to administrative procedure, the Plaintiff filed a timely appeal to Grievance Officer S. Simpson, pointing out that his witnesses/evidence was not produced; there was no specificity to how Plaintiff participated in the dangerous disturbance; there was no administrative rule that allows the Adjustment Committee to "merge" disciplinary reports; the serving of the disciplinary reports on 3/6/18 and 4/13/18 were untimely; the tactical team used excessive force; the strip search was abusive and humiliating; and the Plaintiff was forced to endure extremely harsh conditions.

100. Grievance Officer S. Simpson recommended that the grievance be denied. Warden Terri Kennedy concurred with the decision.

101. Plaintiff appealed to the ARB (Debbie Knauer), which denied the

grievance and Director John R. Baldwin concurred with the decision.

102. The actions of Defendants Director John Baldwin, John Doe Deputy Director, Sergant Francis and John/Jane Doe Statewide Tactical Team members, in deploying the Statewide Tactical Team to 8 gallery; using chemical agents and physical force against the Plaintiff without need or provocation; forcing Plaintiff to kneel on knees against wall for 45 minutes while suffering the severe effects of chemical agents; strip searching Plaintiff while restrained, forcing him to bend over, then touching his buttocks and genitals with baton; forcing Plaintiff to sit restrained behind his back with leg shackles on, covered in chemical agents for 3 hours; or in failing to intervene to prevent the misuse of force, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

103. The actions of Defendants Sergant Francis and John/Jane Doe Statewide Tactical Team members in using physical force against the Plaintiff without need or provocation constituted the tort of assault and battery under the law of Illinois.

104. The actions of Defendants Dalton, Posey and Wolf in refusing to call/produce the witnesses/evidence requested by the Plaintiff; finding him guilty of dangerous disturbance, security threat group or unauthorized organizational activity and disobeying a direct order essential to safety and security with no evidence to support the charges; disregarding the procedural safeguards by "mergeing" 2 disciplinary reports; failing to dismiss disciplinary reports as untimely; and of Kennedy in upholding the disciplinary decision, denied the Plaintiff due process of law in violation of the Fourteenth Amendment of the United States Constitution.

105. The actions of Defendants Sergant Francis and Officer Jess Potts in authoring false disciplinary reports, violated Plaintiff's due process rights of the Fourteenth Amendment of the United States Constitution.

106. The failure of Defendants Lieutenant Evans and John Doe Correctional Officers to remove contaminated flood water from cells and gallery on the 3-11 and 11-7 shifts on 2/21/18; to remove and disinfect urine and feces from the gallery; allow Plaintiff to flush the toilet that contained urine & feces, and the actions of Sgt. Francis, Major French, John Doe Correctional Officers and John Doe Statewide Tactical Team members in dispersing chemical agents onto Plaintiff's person and throughout his cell and property without providing timely or any decontamination; placing Plaintiff's soap, toothpaste, toothbrush and deodorant in a urine & feces filled toilet; and of Warden Kennedy of ordering that the water be shut off and not restored for 27 hours constituted deliberate indifference to Plaintiff's and other prisoners safety and basic human needs, as well as cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue a declatory judgment stating that:

1. The physical abuse of the Plaintiff by Defendants Sergant Francis and John/Jane Doe members of the Statewide Tactical Team violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted an assault and battery under state law.

2. Defendants Sergant Francis, Officer Jess F. Potts, Lieutenant Dalton, Major Posey and C/O Wolf actions in authoring false disciplinary reports, conducting the Plaintiff's disciplinary hearing and Defendant Kennedy's actions in concurring with them, violated the Plaintiff's rights under the Due Process Clause of the

Fourteenth Amendment of the United States Constitution.

    3. Defendants John Doe Correctional Officers, Major French, Lieutenant Evans, Sergant Francis, John/Jane Doe Statewide Tactical Team members and Warden Kennedy's actions in failing to provide humane conditions violated Plaintiff's rights under the Eighth Amendment.

B. Issue an injunction ordering Defendant Kennedy to:

    1. Expunge the disciplinary convictions described in this Complaint from the Plaintiff's institutional record.

C. Award compensatory damages in the following amounts:

    1. $50,000.00 jointly and severally against Defendants Director Baldwin, John Doe Deputy Director, Sergant Francis and John/Jane Doe Statewide Tactical Team members for the physical and emotional injuries sustained as a result of the attack on Plaintiff.

    2. $50,000.00 jointly and severally against Defendants Sergant Francis, Officer Potts, Lieutenant Dalton, Major Posey, C/o Wolf and Warden Kennedy for falsifying reports, the punishment, including deprivation of liberty and amenity, and emotional injury resulting from their denial of due process in connection with the Plaintiff's disciplinary proceedings.

    3. $25,000.00 jointly and severally against Defendants Warden Kennedy, Major French, Lieutenant Evans, Sergant Francis, John Doe Correctional Officers and John/Jane Doe Statewide Tactical Team members for the physical and emotional injury resulting from the harsh conditions Plaintiff endured.

D. Award punitive damages in the following amounts:

    1. $15,000 each against Sergant Francis and John Doe Statewide Tactical Team Members.

    2. $10,000.00 each against Director Baldwin, John Doe Deputy Director, Warden Kennedy, Major Posey, Lieutenant Dalton, C/o Wolf, Officer Potts.

    3. $5,000.00 each against Lieutenant Evans, Major French and John Doe C/o's.

E.   Any additional relief this Court deems just, proper and equitable.

Date: April 21, 2019

Respectfully Submitted,
Mark Scott. #K68188
Pontiac C.C.
P.O. Box 99
Pontiac, IL 61764

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Pontiac, IL on 4/21/2019

*Mark Scott*
Mark Scott