E-FILED
Monday, 06 January, 2020  09:06:43 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| **MARK SCOTT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:19-cv-01143-CSB** |
| | ) | |
| **JOHN BALDWIN, et al.,** | ) | |
| **Defendants.** | ) | |

### MERIT REVIEW ORDER

Plaintiff *pro se*, Mark Scott, filed a complaint [1] under 42 U.S.C. § 1983 alleging constitutional violations against several Defendants who work at Pontiac Correctional Center ("Pontiac"), where the events at issue occurred. Plaintiff has also filed a motion for status [5].

Plaintiff's complaint is before the Court for merit review under 28 U.S.C. §1915A, which requires the Court to "screen" the complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be

granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

On February 21, 2018, at about 11:00 p.m., Defendant sergeant T.J. Francis and Defendant John Doe 2 (Statewide Tactical Team) ("Tactical Team") responded to "a series of incidents" that occurred across from Plaintiff's cell. (ECF 1: p. 3:21.) Plaintiff alleges that unknown Tactical Team members entered his cell and, without provocation, sprayed the back of Plaintiff's head with mace three times. Plaintiff lost consciousness but when he awoke, he was in handcuffs and leg shackles being punched in his face and ribs by Tactical Team members. They escorted Plaintiff to the dining hall and made him kneel with his chest against a wall for forty-five

2

minutes while restrained. During that time, Plaintiff could not see or breathe freely due to a burning sensation.

Tactical Team members then transported Plaintiff to see a nurse who applied a solution to Plaintiff's eyes. Afterward, Plaintiff claims that he had to endure a humiliating and abusive strip search. In this regard, Plaintiff recalls that while handcuffed and shackled, Tactical Team members used a baton to manipulate certain parts of his body during their search. Plaintiff returned to the dining hall, where he sat restrained for three hours, still suffering the effects of the mace. Plaintiff returned to his cell and had to wait about eight hours after being sprayed with mace to take a shower. On the afternoon of February 22, 2018, Plaintiff alleged that he was again "sprayed, beaten, and extracted, then returned to [his] cell" by Tactical Team members. (*Id*. p. 7:61.)

Plaintiff next alleges that after returning to his cell, on the morning of February 22, 2018, he had no running water, and the gallery had standing water "contaminated with feces and urine." (*Id*. p. 6:54.) Plaintiff alerted Defendant corrections major Glendal French that he was pushing a food

cart through the contamination. French replied, "You put it there; deal with it." (*Id*. p. 7:55.) Plaintiff later asked Defendant corrections lieutenant Evans to turn on the water to his cell and distribute cleaning supplies, but Evans refused. Plaintiff admits that the contamination on the gallery floor was cleared later that evening, and he had water in his cell the next day.

Plaintiff also alleges that members of an Adjustment Committee denied him due process in adjudicating two disciplinary tickets issued to Plaintiff on February 23, and March 6, 2018.

The Court notes that "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1994). However, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary for the sole purpose of punishment or the infliction of pain." *Id*.

Furthermore, a strip search conducted in either a jail or prison can constitute cruel and unusual punishment proscribed by the Eighth

Amendment. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). A claim

arises under the Eight Amendment when a Plaintiff "plausibly alleges that

the strip-search in question was motivated by a desire to harass or

humiliate rather than by a legitimate justification, such as the need for

order and security in prisons." *Id*. "[O]nly those searches that are

maliciously motivated, unrelated to institutional security, and hence totally

without penological justification are considered unconstitutional." *Whitman*

*v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (internal quotation marks

omitted). Although a legitimate justification may exist, a strip search may

violate the Eighth Amendment if conducted in a manner that shows the

intent to humiliate and cause psychological harm. *King*, 781 F.3d at 897.

 Liberally construing the factual allegations in Plaintiff's favor, the

Court finds that Plaintiff has stated Eighth Amendment claims against the

unidentified Tactical Team members for spraying Plaintiff with mace and

for the method and manner Tactical Team members used to conduct

Plaintiff's strip search on February 22, 2018.

5

Although Plaintiff mentioned Defendant Francis' presence on the date at issue, Plaintiff does not explicitly allege that Francis participated in the constitutional violations. Thus, Plaintiff fails to state a claim for relief against Francis. However, Francis will remain as a Defendant for the sole purpose of facilitating the identification of Tactical Team members. *See Donald v. Cook Co. Sheriff's Dept.*, 95 F.3d 548 (7th Cir. 1996) (holding that a court may allow the case to proceed to discovery against a high-level official with the expectation that she will aid in identifying any Doe defendants.)

However, the Court concludes that Plaintiff's allegations regarding his cell conditions and the denial of due process belong in a separate lawsuit. Plaintiff's allegations identify various defendants and present separate claims. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (holding that unrelated claims against different defendants belong in different suits, not only to prevent morass but also to ensure that prisoners pay the required filing fees). If Plaintiff intends to pursue those allegations,

he must file separate lawsuits and pay the required filing fees. With the

entry of this Order, Plaintiff's motion for status [5] is moot.

**IT IS THEREFORE ORDERED:**

1) **After reviewing Plaintiff's complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff has alleged enough facts to proceed with his Eighth Amendment claims against Defendant Tactical Team members, for spraying Plaintiff with mace and the method and manner in which they conducted a strip search of Plaintiff on February 22, 2018. These claims proceed against the Tactical Team members in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

2) **The Court directs the Clerk of the Court ("Clerk") to terminate the remaining Defendant in this case, except for Defendant Francis, who will remain as a Defendant for the sole purpose of facilitating identification of Tactical Team members.** *See Donald v. Cook Co. Sheriff's Dept.*, **95 F.3d 548 (7th Cir. 1996) (holding that a court may allow the case to proceed to discovery against a high-level official with the expectation that she will aid in identifying any Doe defendants.)**

3) **Plaintiff's motion for status [5] is MOOT.**

4) **This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions so that Defendants have enough notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.**

5) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have sixty days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within ninety days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

6) Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) Defendants shall file an Answer within sixty days from the date the Clerk sends the waiver. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

8) This District uses electronic filing, which means that, after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and

responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9)  The Court grants Defendants' counsel leave to depose Plaintiff at his place of confinement. Defendant's counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the full costs of formal service according to Federal Rule of Civil Procedure 4(d)(2).

The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

12) The Court directs the Clerk to attempt service on Defendant Francis using the standard procedures.

ENTERED January 6, 2020.


s/ Colin S. Bruce
_____
COLIN S. BRUCE
UNITED STATES DISTRICT JUDGE