**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| MARK SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-1143 |
| v. | ) | |
| | ) | Judge Colin Sterling Bruce |
| JOHN BALDWIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Plaintiff Mark Scott, by his undersigned attorneys, respectfully moves this Court to grant him leave, pursuant to Fed. R. Civ. P. 15(a)(2), to file the attached Proposed Second Amended Complaint, and in support thereof states:

**PROCEDURAL BACKGROUND**

1.     This is an excessive force and abusive strip search case against members of the Orange Crush Statewide Tactical Team, who meted out group punishment to Plaintiff and other prisoners on his gallery in response to a prisoner uprising.

2.     Plaintiff's First Amended Complaint, which he filed *pro se* on May 8, 2020, alleges that on February 22, 2018, members of the Statewide Tactical Team entered the cell house where Plaintiff was housed and began extracting prisoners from their cells. *See* Dkt. 21 at ¶ 9-10. Plaintiff alleges that Defendants Francis, Delong, Little and Slusser entered his cell, and without warning or provocation, Francis sprayed Plaintiff with chemical agents, which caused Plaintiff to fall to the ground. *Id.* at 12-16. While Plaintiff was on the ground, Francis continued to spray Plaintiff with chemical agents, causing Plaintiff to lose consciousness. *Id.* at ¶ 17. When Plaintiff awoke, he was in handcuffs and leg shackles being punched in his face and ribs

by Delong, Little, and Slusser. Plaintiff was then dragged out of the cell and down the gallery and taken to the dining hall, where he was ordered to kneel with his chest against a wall for forty-five minutes while he was restrained. *Id.* at ¶ 18-20. Plaintiff also alleges in his Amended Complaint that he was subjected to an abusive and humiliating strip search, where one of the defendants used a baton to spread Plaintiff's buttocks and move his genitals. *Id.* at ¶ 22-23.

3.      Paragraph 33 of Plaintiff's Amended Complaint contains the specific claims he is asserting:

> The actions of defendants Sergeant Thomas Francis, C/O Kyle K. Delong, C/O Little #5466 and C/O A. Slusser, in using chemical agents and physical force against the plaintiff without need or provocation; forcing the plaintiff to kneel his knees against wall for 45 minutes while suffering the severe effects of chemical agents; strip searching the plaintiff while restrained, forcing him to bend over, then touching his buttocks and genitals with baton; forcing the plaintiff to sit restrained behind his back with leg shackles on, covered in chemical agents for 3 hours; *or in failing to intervene to prevent the misuse of force*, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

*Id.* at ¶ 33 (emphasis added).

4.      In its Merit Review Order of May 8, 2020, the Court granted Plaintiff's motion to file the Amended Complaint and found that:

> Plaintiff states (1) an Eighth Amendment claim against Defendant Francis for the way Francis sprayed Plaintiff with mace, (2) an Eighth Amendment excessive force claim against Defendants Delong, Little, and Slusser, and (3) an Eighth Amendment claim against Defendant Doe for the method used to conduct Plaintiff's strip search. These claims proceed against Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

Dkt. 20.

5.      On October 26, 2020, Plaintiff filed a "Motion Identifying John Doe," identifying Defendant Thomas Francis as "the person responsible" for the strip search. *See* Dkt. 37. What Plaintiff intended to convey in his motion was that Defendant Francis, as the Tactical Team

leader and supervisor, was liable for the improper strip search both as the searching Defendant and, alternatively, under a theory of supervisory liability.

6.    On October 27, 2020, the Court granted Plaintiff's motion and stated, "the Court clarifies that Plaintiff states an Eighth Amendment claim against Francis for the way he sprayed Plaintiff with mace and the method he used to conduct Plaintiff's strip search." *See* Text Order of October 27, 2020.

7.    Defendants chose not to conduct any discovery during the discovery period in this case. They did not issue any written discovery requests to plaintiff and they did not take his deposition.

8.    On January 10, 2023, the Court entered an order scheduling the Final Pretrial Conference for June 5, 2023, and ordering that the joint pretrial order and motions *in limine* were due by May 5, 2023. Dkt. 54.

9.    Plaintiff's counsel entered their appearances in February and March of 2023.

10.    Based on the italicized portion of paragraph 33 of Plaintiff's Amended Complaint, as quoted in paragraph four, above, Plaintiff's counsel believed that Plaintiff had asserted failure to intervene claims against Defendants Francis, Delong, Little, and Slusser in addition to his claims against them for excessive force and unconstitutional strip search. Plaintiff's counsel also believed that Plaintiff had asserted a supervisory liability claim against Defendant Francis based on Plaintiff's description of him as "the person responsible" for the strip search.

11.    Plaintiff's counsel's belief that these legal theories could be pursued based on the factual allegations in the complaint was based on longstanding Seventh Circuit case law which holds that under the Federal Rules of Civil Procedure, "it is factual allegations, not legal theories, that must be pleaded in a complaint." *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir.

2014); *see also Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.").

12.     In April and May of 2023, Plaintiff's counsel prepared a draft of the pretrial order. Plaintiff's counsel emailed defense counsel a set of proposed jury instructions which instructed the jury on separate claims of: (1) excessive force against all Defendants; (2) failure to intervene against all Defendants related to Plaintiff's excessive force claim; (3) improper strip search in violation of the Eighth Amendment against Defendant Francis; (4) failure to intervene against all Defendants related to the Eighth Amendment improper strip search; (5) improper strip search in violation of the Fourth Amendment against Defendant Francis; (6) failure to intervene against all Defendants related to the Fourth Amendment improper strip search; and (7) a supervisory liability claim against Defendant Francis related to the Eighth and Fourth Amendment strip search claims. *See* Plaintiff's Proposed Jury Instructions, Dkt. 64-2.

13.     Defense counsel refused to agree to these instructions, claiming that Plaintiff should not be allowed to have the jury decide anything other than an excessive force claim against all Defendants and an Eighth Amendment strip search claim against Defendant Francis based on the Court's Merit Review Order. The parties reached an impasse on this issue.

14.     Seeking clarity from the Court, on May 19, 2023, Plaintiff filed a Motion *In Limine* To Allow The Jury To Determine His Failure To Intervene Claims, Fourth Amendment Strip Search Claim, And Supervisory Liability Claim, articulating the basis for believing that these claims were contained in the operative complaint and requesting that Plaintiff be permitted to present them to the jury. *See* Dkt. 63. Plaintiff further stated:

> To the extent Plaintiff's pro se Amended Complaint is not as clear as it could be with respect to these claims, Plaintiff should be allowed to amend his complaint to clarify that he is asserting the failure to intervene claims, Fourth Amendment strip search claim, and supervisory liability claim described above. Fed. R. Civ. P. 15(a)(2) (a party may amend

4

his complaint with "the court's leave. The court should freely give leave when justice so
requires.").

*Id.*

15.    On March 20, 2024, the Court denied Plaintiff's Motion *in Limine*, citing
Plaintiff's failure to sufficiently brief the relevant factors for amending under Rule 15(a) or by
demonstrating good cause under Rule 16(b). Dkt. 88.

16.    Plaintiff was not attempting to circumvent the requirements of Fed. R. Civ. P.
15(a)(2) via a motion *in limine*; instead, Plaintiff sought clarification from the Court that these
claims were already encompassed within the operative complaint. *See Bartholet v. Reishauer
A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Complaints in a system of notice pleading initiate
the litigation but recede into the background as the case progresses. Later documents, such as the
pretrial order under Rule 16(e), refine the claims; briefs and memoranda supply the legal
arguments that bridge the gap between facts and judgments.").

17.    In light of the Court's order finding that these claims were not contained in the
operative complaint, Plaintiff now seeks leave to file a Second Amended Complaint to add
claims of failure to intervene, Fourth Amendment strip search and supervisory liability.

## ARGUMENT

### I.    Legal Standard

18.    Federal Rule of Civil Procedure 15(a)(2) states that a party may amend his
complaint with leave of court and that "[t]he court should freely give leave when justice so
requires." Indeed, the court "should freely permit an amendment" even during the course of the
trial if the amendment will aid the parties in presenting the merits and the opposing party fails to
demonstrate that they will suffer prejudice as a result of the amendment, even if a continuance is
necessary. Fed. R. Civ. P. 15(b)(1).

19.     When a party seeks leave to amend a pleading after the deadline to do so established by the applicable case management plan has passed, a "heightened good-cause standard" from Rule 16(b)(4) applies before the court considers whether the requirements of Rule 15(a)(2) are satisfied. *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (citation omitted). The heightened good cause standard articulated in Rule 16(b)(4) primarily considers the diligence of the party seeking the amendment to determine whether good cause has been established. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citation omitted). The movant bears the burden to establish its diligence under Rule 16(b)(4). *Id.*

## II.     Plaintiff Has Shown Diligence for the Amendment Under Rule 16(b)

20.     Plaintiff respectfully submits that the untimeliness of the proposed amendment is excusable. Throughout the proceedings, Plaintiff and his counsel were operating under the belief that the failure to intervene claims, Fourth Amendment strip search claim, and supervisory liability were already encompassed within the Amended Complaint.

21.     This belief was reasonable given the fact that the amended complaint specifically included failure to intervene allegations; the well-settled law that a plaintiff is not required to plead legal theories in his complaint, *see King v. Kramer*, 762 F.3d 635, 642 (7th Cir. 2014) ("the district court was also required to consider our strong commitment to the idea that a plaintiff need not plead legal theories in her complaint"); and the Seventh Circuit's admonition that "*pro se* litigants must be afforded leniency … on procedural matters." *Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018).

22.     It was not until the parties began drafting the pre-trial order that a dispute emerged regarding whether these claims were contained in the operative complaint. Plaintiff exercised due diligence by promptly filing a Motion *in Limine* as a vehicle to resolve the dispute.

23.     In light of the Court's order denying Plaintiff's motion and finding that the claims were not part of the operative complaint, Plaintiff is now promptly seeking leave to amend to add these claims.

24.     Plaintiff submits that he has acted with diligence and that the delay is excusable.

### III.    Plaintiff Has Satisfied the Requirements of Rule 15(a) Because the Motion is Brought in Good Faith, is Not Futile, and Will Not Prejudice the Defendants

25.     Leave to amend a complaint should be freely granted when justice so requires, *see* Fed. R. Civ. P. 15(a), unless there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile. *See Forman v. Davis*, 371 U.S. 178, 182 (1962).

26.     As explained above, there is no undue delay, bad faith or dilatory motive. Plaintiff and his counsel believed that the factual basis for the claims he now seeks to add were already implied in the operative complaint. As soon as Defendants' counsel raised an objection, Plaintiff filed a motion *in limine* to seek clarification from the Court that Plaintiff was permitted to present these claims to the jury. Now that the Court has clarified the issue, albeit by denying Plaintiff's motion, Plaintiff now promptly seeks to amend the complaint to add the claims. Plaintiff's motivation is to have his case resolved on the merits. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

27.      Nor are the proposed amendments futile. *First*, a party can bring a failure-to-intervene claim when an officer had a "realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights," but failed to do so. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). Furthermore, it is possible to hold a named defendant liable for his failure to intervene vis-à-vis the excessive force employed by another officer, even if the plaintiff cannot identify the officer(s) who used excessive force on him. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("the plaintiff was entitled to have his case against defendants Moran, Pfeiffer, and Finnin submitted to the jury upon his having offered testimony that he was beaten by unknown officers in their presence"); *see also Miller*, 220 F.3d at 495 (plaintiff's inability to identify which of named defendants was his assailant did not preclude liability on excessive force claim; "[i]f Miller can show at trial that an officer attacked him while another officer ignored a realistic opportunity to intervene, he can recover"). Plaintiff alleges that each Defendant was present when Plaintiff was subjected to excessive force and an illegal strip search and that each Defendant failed to intervene to prevent the other Defendants from violating Plaintiff's rights. These allegations easily satisfy the pleading standard. *See, e.g., Ramos v. Rodriguez*, 2022 U.S. Dist. LEXIS 16759, at *11-14 (N.D. Ill. Jan. 31, 2022) (where complaint alleged that the Defendants were direct perpetrators of various uses of force, "it naturally follows that any given participant … (1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring.") (internal quotations omitted).

28.      *Second*, Plaintiff's allegations that he was subjected to an illegal strip search constitute a Fourth Amendment violation in addition to an Eighth Amendment violation. *See*

*Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020). In *Henry*, the Seventh Circuit described the

different roles played by the Fourth and Eighth Amendments with regard to bodily searches:

> Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights. The Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment. *See Whitley*, 475 U.S. at 319-20. Because reasonableness is an objective test, a defendant's subjective state of mind is irrelevant to a court's Fourth Amendment analysis. *See Graham*, 490 U.S. at 398 ("[T]he terms 'cruel' and 'punishments' clearly suggest some inquiry into subjective state of mind, whereas the term 'unreasonable' does not."). The Fourth Amendment thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose. *See Bell*, 441 U.S. at 559.

Plaintiff's factual allegations regarding the strip search present a viable theory under both the

Fourth Amendment and the Eighth Amendment.

29.      *Third*, Plaintiff has a viable theory of supervisory liability against Defendant

Francis. A supervisor is liable for the constitutional violations of a subordinate "if the supervisor,

with knowledge of the subordinate's conduct, approves of the conduct and the basis for it."

*Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quoting *Lanigan v. Vill. of E. Hazel

Crest*, 110 F.3d 467, 477 (7th Cir. 1997)). Plaintiff's allegations against Defendant Francis—that

he was the tactical team leader and was present when another tactical team member under his

command subjected Plaintiff to an illegal strip search—states a supervisory liability claim.

30.      The Defendants are not prejudiced by the proposed amendments. Defendants

were on notice that Plaintiff made allegations of failure to intervene against them when the

Amended Complaint was filed in May 2020; Defendant Francis was on notice of Plaintiff's

allegations that he was the "person responsible" for the strip search in October 2020; and

Plaintiff's Fourth Amendment claim is simply an alternative legal characterization of the

complaint's facts related to the strip search. Defendants chose not to conduct any written or oral

discovery in this case whatsoever. Any argument that the Defendants' approach to defending this case would have been different if these three legal theories would have been specifically pled as claims in the Amended Complaint is disingenuous. Moreover, Plaintiff was unable to take any of the Defendants' depositions since he was *pro se* throughout the course of discovery. Therefore, the Defendants will be testifying about their actions and inactions with regard to their use force and strip search for the first time at trial (which has yet to be scheduled), and have ample time to prepare their defense.

WHEREFORE, Plaintiff respectfully requests that this Court grant him leave to file the attached Proposed Second Amended Complaint.

Dated: April 1, 2024                    Respectfully submitted,


                                        /s/ Hakeem Muhammad
                                        Ben H. Elson, Brad J. Thomson
                                        Hakeem Muhammad
                                        PEOPLE'S LAW OFFICE
                                        1180 N. Milwaukee Ave.
                                        Chicago, IL 60642
                                        (773) 235-0070